UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROBERT H. STEINFELD,

        Plaintiff,

- *against* -

IMS HEALTH INCORPORATED,

        Defendant.

10 Civ. 3301 (CS)(PED)

MEMORANDUM
AND ORDER

**PAUL E. DAVISON, U.S.M.J.:**

  By letter dated October 31, 2011, Plaintiff seeks an order compelling Defendant to produce certain documents containing communications shared between attorneys for Defendant and a compensation consulting firm and its principal, Steven Root ("Root") (Docket No. 32). This matter comes before me pursuant to an Order of Reference dated November 17, 2011 (Docket No. 34). The parties have submitted written materials in support of their arguments and a hearing was held on December 7, 2011. Defendant's offer to produce the documents at issue for *in camera* inspection was accepted and that material has been reviewed.

  IMS retained Root as an independent equity compensation consultant.[1] He advises IMS directors and counsel on matters involving the company's executive compensation and benefits plans and disclosure obligations. On this basis, Defendant contends that the communications shared between counsel for IMS and Root are protected by the attorney-client privilege. Defendant relies upon the theory announced by the Eighth Circuit in In re Bieter Co., 16 F.3d 929 (8th Cir. 1994) and which a small number of district courts within this circuit have recognized. Under this authority, the privilege is extended in certain narrow instances to protect "communications between a corporation's attorney and outside agents or consultants to the

---

[1] Although Root is an attorney, Defendant acknowledges that IMS retained him as a compensation consultant and not as a legal advisor. (Docket No. 35).

corporation who act as the functional equivalent of a corporate employee." In re Currency Conversion Fee Antitrust Litig., No. MDL 1409 M 21-95, 2003 WL 22389169, at *2 (S.D.N.Y. Oct. 21, 2003). Defendant specifically argues that Root was the functional equivalent of an IMS employee because he "contribute[d] to the rendering of legal advice in communications with the client's outside counsel," was "necessary to [such] communication[s]," and "possesse[d] information needed by [IMS counsel in order to] render[ ] legal advice" to their client. (Docket No. 35, at p.2 (quotation omitted)).

Where, as here, a federal court has diversity jurisdiction over a matter, state law governs claims of attorney-client privilege. Fed. R. Evid. 501; see, e.g., Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc., No. 05-cv-5155, 2008 WL 5231831, at *1 (E.D.N.Y. Dec. 11, 2008) (citing Allied Irish Banks, P.L.C. v. Bank of Am., N.A., No. 03-cv-3728, 2008 WL 783544, at *3 (S.D.N.Y. Mar. 26, 2008)). Under New York law, "[t]he attorney-client privilege protects confidential communications between a lawyer and client relating to legal advice sought by the client." Matter of Nassau Cnty. Grand Jury Subpoena Duces Tecum Dated June 24, 2003, 4 N.Y.3d 665, 678 (2005) (citing Matter of Priest v. Hennessy, 51 N.Y.2d 62 (1980) and N.Y. C.P.L.R. § 4503). The purpose of the privilege, like its federal counterpart, is "to ensure that one seeking legal advice will be able to confide fully and freely in his attorney." Hennessy, 51 N.Y.2d at 67-68; see also Upjohn Co. v. United States, 449 U.S. 383, 387 (1981) (the "purpose [of the federal common law privilege] is to encourage full and frank communication between attorneys and their clients"). "Although typically arising in the context of a client's communications to an attorney, the privilege extends as well to communications from attorney to client." Sieger v. Zak, No. 19978/05, 2008 WL 598344, at *8 (N.Y. Sup. Ct. Feb. 21, 2008) (citing Spectrum Sys. v. Chem. Bank, 78 N.Y.2d 371, 377 (1991)).

Generally, the presence of third parties waives entitlement to the attorney-client privilege. See, e.g., Morgan v. N.Y. Dep't of Envtl. Conservation, 779 N.Y.S.2d 643, 645 (App. Div. 2001) (privilege destroyed where documents are carbon copied to third parties). While, as discussed below, certain exceptions apply, courts should be cautious when expanding the privilege's application. See, e.g., Exp.-Imp. Bank of the U.S. v. Asia Pulp & Paper Co., 232 F.R.D. 103, 114 (S.D.N.Y. 2005) (citing In re Horowitz, 482 F.2d 72, 81 (2d Cir. 1973)); Sieger, 2008 WL 598344, at *8 (citing Hennessy, 51 N.Y.2d at 68). The party asserting entitlement to the privilege bears the burden of proof. Nassau Cnty., 4 N.Y.3d at 678.

Because the cases relied upon by counsel in this matter are extremely fact-specific, I first discuss Bieter and other cases applying its functional equivalence test.

In Bieter, a two-man partnership formed for purposes of developing farm land. A third-party real estate consultant was retained who worked out of the company's office for several years. The consultant's primary duty was to secure tenants for the development project. He also worked directly with architects, other consultants, and attorneys on matters related to the project and its ensuing litigation. He appeared on behalf of the company at public hearings and was viewed by the public as a representative of the company. Accordingly, the court determined that "[t]here [was] no principled basis to distinguish [the consultant]'s role from that of an employee, and his involvement in the subject matter of the litigation makes him precisely the sort of person with whom a lawyer would wish to confer confidentially in order to understand [the company]'s reasons for seeking representation." Bieter, 16 F.3d at 938.

In In re Copper Market Antitrust Litigation, 200 F.R.D. 213 (S.D.N.Y. 2001), a Japanese corporation retained a public relations firm as an independent consultant after a corporate executive disclosed information which prompted government investigations and litigation. The

corporation had no experience with, or other employees who could deal with, public relations communications in the English-speaking, Western media. The PR firm issued press statements on behalf of the corporation and otherwise communicated with the Western press as an agent of the corporation. In the course of preparing and making its communications and statements, the firm consulted with the corporation's in-house and outside counsel. The firm also had the authority to make independent decisions on the corporation's behalf with respect to public relations matters. Accordingly, the court determined that the firm was the functional equivalent of a corporate employee. See Copper Mkt., 200 F.R.D. at 219.

In Twentieth Century Fox Film Corporation v. Marvel Enterprises, No. 01-cv-3016, 2002 WL 31556383 (S.D.N.Y. Nov. 15, 2002), a studio contracted with individuals as independent contractors to perform movie production services. The film produced became the subject of ensuing litigation. The court held that the contractors were the functional equivalent of employees because "the sporadic nature of employment in the motion picture industry . . . dictates the use of independent contractors over employees." Marvel, 2002 WL 31556383, at *2.

In In re Adelphia Communications Corporation, No. 02-41729, 2007 WL 601452 (S.D.N.Y. Feb. 20, 2007), an independent credit counseling firm was retained as an independent contractor. An employee of the contractor worked full-time at the corporation for three years. He held substantial responsibility with respect to the corporation's relations with another company. He also became the primary contact person between the corporation and the other company, and was given authority to make decisions and to speak on behalf of the corporation. In addition, the employee of the contractor sought legal advice from the corporation's counsel as part of his job duties. Accordingly, the court held that this individual was "the functional equivalent of a [corporate] employee." Adelphia, 2007 WL 601452, at *9.

4

In <u>American Manufacturers Mutual Insurance Company v. Payton Lane Nursing Home</u>, No. 05-cv-5155, 2008 WL 5231831 (E.D.N.Y. Dec. 11, 2008), an independent construction management contractor was retained by a company for purposes of overseeing the daily operations of a construction project. The company itself did not send its own employees to the construction site, nor did it employ staff with construction experience. The contractor was given authority to speak for, and to make decisions on behalf of, the company relating to the construction project. This included negotiating with contractors and pursuing payments. The contractor also sought legal advice from the company's attorney regarding the construction project. Accordingly, the court held that the contractor served as the company's "eyes and ears" and was therefore the functional equivalent of an employee. <u>Payton Lane</u>, 2008 WL 5231831, at *3.

In contrast, in <u>Export-Import Bank of the United States v. Asia Pulp and Paper Company</u>, 232 F.R.D. 103 (S.D.N.Y. 2005), a Singapore corporation retained an independent financial consultant to help the corporation restructure its debt. The corporation did not have employees of its own with experience in restructuring. The consultant negotiated on behalf of the corporation and communicated the corporation's positions to creditors. Although the corporation provided the consultant with office space in its building, the office was not used. Additionally, the court determined that the consultant did not spend a sufficient amount of his time working with corporation. Accordingly, the court held that the party asserting entitlement to the attorney-client privilege failed to meet its burden to show that the consultant was "so fully integrated into the [corporation's] hierarchy as to be a *de facto* employee." <u>Asia Pulp</u>, 232 F.R.D. at 114.

In this case, Defendant has failed to meet its burden to show that Root is the functional

5

equivalent of an IMS employee.[2] First, there is no indication that IMS uses independent contractors instead of employees because its business is sporadic. Cf. Marvel, 2002 WL 31556383, at *2. Second, there is no evidence that Root has ever appeared on behalf of IMS, corresponded with third parties as a representative of IMS, or has been viewed by others as an employee of IMS. *In camera* review of the documents at issue reveals that Root frequently signed his emails as the managing director of his consulting firm and submitted memoranda on his own firm's letterhead. Cf. Bieter, 16 F.3d at 933-38; Payton Lane, 2008 WL 5231831, at *2-3; Adelphia, 2007 WL 601452, at *8-9; Copper Mkt., 200 F.R.D. at 219.

Third, Defendant offers nothing to suggest that Root was so physically present that he functioned as a *de facto* employee. For example, there is nothing to indicate that Root has ever maintained an office at IMS or otherwise spent a substantial amount of his time interacting with, and working on behalf of, the corporation. See Asia Pulp, 232 F.R.D. at 113-14; cf. Bieter, 13 F.3d at 933-38; Payton Lane, 2008 WL 5231831, at *2-3; Adelphia, 2007 WL 601452, at *8-9.

Fourth, Defendant offers nothing to show that IMS lacked the internal resources necessary for an employee to perform Root's services. Indeed, as *in camera* review tends to confirm, Root participated as part of a "team" of IMS employees and outside counsel. Cf. Bieter, 13 F.3d at 933-38; Payton Lane, 2008 WL 5231831, at *2-3; Copper Mkt., 200 F.R.D. at 219.

Fifth, the evidence presented does not reveal that Root exercises any measure of

---

[2] I note that Bieter concerned the federal common law attorney-client privilege. With the exception of Payton Lane, the cases discussed above also concern the federal privilege. At least one state court has recognized Bieter's application under New York law. Sieger, 2008 WL 598344, at *9. However, I need not address the issue of Bieter's applicability in New York in light of my determination that Defendant has failed to show that Root is the functional equivalent of an IMS employee.

independent decision-making authority within this team. Instead, it appears that Root's role was to provide suggestions, comments, and (non-legal) advice. Cf. Payton Lane, 2008 WL 5231831, at *2-3; Adelphia, 2007 WL 601452, at *8-9; Copper Mkt., 200 F.R.D. at 219.

Finally, Defendant has failed to show that Root has ever sought out legal advice from IMS's attorneys as part of his work with the corporation. Rather, the communications reviewed indicate that it was *Root* who offered advice and suggestions to counsel and the team in general. Cf. Bieter, 13 F.3d at 933-38; Payton Lane, 2008 WL 5231831, at *2-3; Adelphia, 2007 WL 601452, at *8-9; Copper Mkt., 200 F.R.D. at 219.

Root's status *vis-a-vis* Defendant is simply distinguishable from the situations in those cases that have followed Bieter. Root is not, therefore, the functional equivalent of an IMS employee.[3] Accordingly, Plaintiff's request to compel production is **GRANTED**. Defendant is directed to produce to Plaintiff the documents shared with Mr. Root or his firm no later than December 16, 2011.

Dated: December 9, 2011
      White Plains, New York

**SO ORDERED.**

_____
Paul E. Davison
United States Magistrate Judge
Southern District of New York

---

[3] To the extent Defendant separately argues the privilege applies because Root acted as an agent of IMS who had information necessary for counsel to render legal advice to IMS, Defendant has similarly failed to meet its burden of proof. An attorney's communications with a third party will be privileged "if the third party's role is limited to helping a lawyer give effective advice by explaining . . . concepts to the lawyer." Asia Pulp, 232 F.R.D. at 113 (citing United States v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961)). Here, Root's role was simply more expansive than this. He did not explain unfamiliar concepts to counsel, but instead provided the "team" with suggestions and advice on what actions may be undertaken. Such communications are not privileged. Id.