UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
ROBERT H. STEINFELD,

                          Plaintiff,

         - against -

IMS HEALTH INCORPORATED,

                         Defendant.
-------------------------------------------------------------------------x

**OPINION AND ORDER**

No. 10-CV-3301 (CS)(PED)

Appearances:
Dean G. Yuzek
Jennifer B. Zourigui
Ingram Yuzek Gainen Carroll & Bertolotti, LLP
New York, New York
*Counsel for Plaintiff*

Kenneth W. Taber
Susan P. Serota
Anne C. Lefever
Pillsbury Winthrop Shaw Pittman LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

    Before the Court is Plaintiff's Motion for Summary Judgment. (Doc. 54.) For the following reasons, Plaintiff's Motion is DENIED.

## I. BACKGROUND

    Plaintiff Robert H. Steinfeld served as Senior Vice President, General Counsel, and Corporate Secretary at Defendant IMS Health Incorporated ("IMS") from November 14, 2000 through July 31, 2009. (P's 56.1 ¶ 2.)[1] Both parties agree that during the period relevant to this case, Plaintiff's employment was governed, at least in part, by his November 14, 2000

---

[1] "P's 56.1" refers to Plaintiff's Rule 56.1 Statement of Material Facts not in Dispute. (Doc. 55.) "D's 56.1" will refer to Defendant's Response to Plaintiff's Concise Statement of Material Facts not in Dispute. (Doc. 61.) I will refer only to P's 56.1 where the fact is not in dispute.

1

Employment Agreement, as Amended and Restated as of January 1, 2005, (the "Employment Agreement"),[2] and his October 24, 2008 Change-In-Control Agreement (the "CIC Agreement").[3] (Complaint, (Doc. 1), ¶ 15; First Amended Answer and Affirmative Defenses of Defendant IMS Health Incorporated, (Doc. 48), ¶ 15.)  The Employment Agreement distinguishes between termination without cause that occurs prior to or more than two years after a "Change in Control" as defined by the agreements, (Employment Agreement § 7(c)), and termination without cause that occurs within two years after a "Change in Control", (*id.* § 7(e)).  Both sections provide that the Defendant may terminate the Plaintiff "upon at least 90 days written notice" and that, notwithstanding such notice period, the company may elect to:

> terminate [Plaintiff's] positions specified in Sections 1 and 3 and all other obligations of [Plaintiff] and [Defendant] under Section 3 at a date earlier than the expiration of such 90-day period, if so specified by the [Defendant] in the written notice, provided that [Plaintiff] shall be treated as an employee of [Defendant] (without any assigned duties) for all other purposes of this Agreement, including for purposes of Sections 4 and 5, from such specified date until the expiration of such 90-day period.

(*Id.* § 7(c), (e).)  The crucial difference between Section 7(c), which governs termination before or more than two years after a change in control, and Section 7(e), which governs termination within two years after a change in control, is that Plaintiff would be entitled to substantially more severance compensation if terminated under Section 7(e) than if terminated under Section 7(c). For example, under Section 7(e)(ii), Plaintiff would receive a lump sum equal to three times the lump sum he would receive under Section 7(c)(ii). (*Compare* Employment Agreement § 7(c)(ii), *with id.* § 7(e)(ii).)

---

[2] Plaintiff has submitted a copy of the Employment Agreement as Exhibit 3 to the Affidavit of Dean G. Yuzek, ("Yuzek Aff.").  (Doc. 62.)  Defendant has submitted an apparently identical copy as Exhibit 3 to the Affirmation of Kenneth W. Taber in Opposition to Plaintiff's Motion for Summary Judgment, ("Taber Aff.").  (Doc. 58.)

[3] Plaintiff has submitted a copy of the CIC Agreement as Exhibit 4 to the Yuzek Aff.  Defendant has submitted an apparently identical copy as Exhibit 5 to the Taber Aff.

By the end of June 2009, the wheels were set in motion for Plaintiff's departure. (P's 56.1 ¶¶ 22-23.)[4] On July 23, 2009, Karla Packer, Defendant's Senior Vice President, Human Resources, sent Plaintiff a "Notification of Termination" letter ("Notice") advising Plaintiff that Defendant was "terminating [his] employment pursuant to Section 7(c) of [his] Employment Agreement." (Notice 1.)[5] The Notice continued, largely parroting Section 7(c):

> In lieu of the 90 days' notice of the Company's termination of your employment specified by Section 7(c) of the Agreement, the Company elects by this notice in accordance with Section 7(c) to terminate your positions specified in Sections 1 and 3 of the Agreement and all other obligations of you and the Company under Section 3 of the Agreement as of the close of business on July 31, 2009, but to provide you with the compensation and benefits to which you would have been entitled had your employment continued through October 20, 2009. You will be considered to have a "separation from service," within the meaning provided by Treasury Regulations Section 1.409A-1(h), effective as of the close of business on July 31, 2009.

(*Id.*) Attached to the Notice was a Release for execution by Plaintiff, as well as an Exhibit 1 to that Release (which was to be executed by both parties), styled "Summary of Benefits Provided Under Employment Agreement with IMS Health Incorporated as amended and restated as of January 1, 2005," ("Summary of Benefits"). (Taber Aff. Ex. 38.)[6] The Release bears Plaintiff's signature; the Summary of Benefits bears both Plaintiff's and Defendant's. (*Id.*) The Summary of Benefits referred to July 31, 2009 as the date of Plaintiff's "separation from service," and calculated various benefits due him as if his employment had terminated on that date. Whether

---

[4] The parties dispute whether Plaintiff or Defendant initiated these machinations. (*See, e.g.*, D's 56.1 ¶ 22.) Resolution of this factual dispute is not relevant to the disposition of the instant Motion.

[5] Plaintiff has submitted a copy of the Notice as Exhibit 13 to the Yuzek Aff. Defendant has submitted an apparently identical copy as Exhibit 1 to the Taber Aff.

[6] Defendant has submitted copies of the Release (executed by Plaintiff on August 6, 2009) and the Summary of Benefits (executed by Karla Packer on August 5, 2009 and Plaintiff on August 6, 2009) as Exhibit 38 to the Taber Aff. Curiously, Plaintiff submitted the executed Release as Exhibit 14 to the Yuzek Aff., but submitted only an unexecuted copy of the Summary of Benefits as Exhibit 20 to the Yuzek Aff.

the Summary of Benefits means his employment in fact terminated on that date, or just reflects that Plaintiff was being treated as if it had, is at the heart of the dispute.

The parties have stipulated that a potential change of control triggering Section 7(e) of the Employment Agreement occurred as of October 20, 2009.  (Stipulation and Order, (Doc. 24), ¶ 1.)  The parties further agree that, if Plaintiff's employment terminated at some point before October 20, 2009 (*i.e.*, on July 31, 2009, as Defendant argues), he would not be entitled to Change in Control benefits under the CIC Agreement and Section 7(e) of the Employment Agreement, but if his employment continued through October 20, 2009 (or if he was treated as employed for all purposes until then), he may be entitled to these Change in Control benefits. (*Id.* ¶ 2; P's Mem. 3-4; D's Mem. 9; P's 56.1 ¶ 9.)[7]  Thus, the issue for the Court at this stage is whether the Notice's attached Summary of Benefits (a writing signed by both parties) operated to modify the Employment Agreement such that Plaintiff's employment terminated on July 31, 2009, before the October 20, 2009 trigger date for Change in Control benefits, or if the Summary did not so modify and instead is consistent with Plaintiff being "treated as an employee of the Company (without any assigned duties) for all other purposes of this Agreement," (Employment Agreement § 7(c)), making him an employee on October 20, 2009 and therefore entitled to Change in Control benefits.

Plaintiff, the movant, argues that:  (1) there was no amendment because Defendant disclosed no such amendment on its Form 10-Q or Form 10-K SEC submissions, (P's Mem. 9-10); (2) nothing in the Notice, Release, and Summary of Benefits, constitutes an amendment, (*id.* at 10-19); (3) the fact that Defendant moved Plaintiff to its retiree health plan does not support a

---

[7] "P's Mem." refers to Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment.  (Doc. 56.) "D's Mem." refers to Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment. (Doc. 57.)  Defendant maintains that, even if Plaintiff's employment continued until October 20, 2009, waiver and estoppel preclude his entitlement to recovery in this case.  (D's Mem. 27-30.)

4

contract amendment theory, (*id.* at 19-22); and (4) extrinsic evidence supports the view that the Notice, Release, and Summary of Benefits are not amendments, (*id.* at 22-25).  Defendant opposes, arguing that:  (1) the signed Summary of Benefits meets the requirements of the Employment Agreement's merger clause and constitutes an amendment, (D's Mem. 12-17); (2) extrinsic evidence supports the view that the Summary of Benefits is an amendment, (*id.* at 18-27); and (3) even if the Summary of Benefits were not an amendment, Plaintiff is still not entitled to benefits under the doctrines of waiver and estoppel, (*id.* at 30).

## II. APPLICABLE LEGAL STANDARDS

### A. Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "Once the moving party properly supports its motion for summary judgment, the non-moving party must establish a genuine issue of material fact in order to preclude a grant of summary judgment." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86

(1986)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252. Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

B. Contract Modification Under Connecticut Law[8]

Under Connecticut law, "[p]arties may alter any term of an existing contract by entering into a subsequent contract. The contract as modified becomes a new contract between the

---

[8] The Employment Agreement and the CIC Agreement are, by their express terms, governed by Connecticut Law. (*See* Employment Agreement § 11(a); CIC Agreement § 12.)

parties." *Ass'n Res., Inc. v. Wall*, 2 A.3d 873, 902 (Conn. 2010) (alteration and internal quotation marks omitted). "In order to prove that a contract has been modified, the party asserting modification must show mutual assent to its meaning and conditions." *Three S. Dev. Co. v. Santore*, 474 A.2d 795, 797-98 (Conn. 1984) (internal quotation marks omitted). "Whether the parties intended to modify their contract is a question of fact," *id.* at 798; *accord Herbert S. Newman & Partners, P.C. v. CFC Constr. Ltd. P'ship*, 674 A.2d 1313, 1320 (Conn. 1996), although "where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law," *Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 746 A.2d 1277, 1287 (Conn. 2000) (alteration and internal quotation marks omitted). In other words, the parties' intent is not a question of law unless "'the contract is unambiguous and the intent of the parties can be determined from the agreement's face.'" *Id.* (quoting 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 30:6 (4th ed. 1999)).

"[I]n determining the issue of whether the parties have made a contract [or an agreement to modify a contract], there is no parol evidence rule to be applied. On this issue, no relevant evidence, whether parol or otherwise, is excluded." *See Ravenswood Constr., LLC v. F.L. Merritt, Inc.*, 936 A.2d 679, 685 (Conn. App. Ct. 2007) (internal quotation marks omitted). Thus, in determining whether there was an agreement to modify an existing contract, all relevant evidence is considered, whether intrinsic or extrinsic. *See id.* at 686 (parol evidence not applicable where sole issue was existence of contract); *see also Gebbie v. Cadle Co.*, 714 A.2d 678, 684 (Conn. App. Ct. 1998) (parol evidence inapplicable to evidence showing "that there was no meeting of the minds and, therefore, that no contract in fact existed").

7

### III. DISCUSSION

    A. Merger Clause

The Employment Agreement contains a merger clause, providing that "[t]his Agreement constitutes the entire agreement among the parties with respect to the matters herein provided, and no modification or waiver of any provision hereof shall be effective unless in writing and signed by the parties hereto." (Employment Agreement § 12(a).) While such a clause is certainly enforceable under Connecticut law, *see, e.g.*, *Fabricated Wall Sys., Inc. v. Herman Miller, Inc.*, No. 08-CV-1313, 2011 WL 5374130, at *5 (D. Conn. Nov. 8, 2011) (no modification where contract had provision "barring modifications unless in writing" and there was no written modification); *Conntect, Inc. v. Turbotect, Ltd.*, No. 97-CV-784, 1998 WL 91067, at *5 (D. Conn. Feb. 23, 1998) (same); *TradeSource, Inc. v. Kemper Constr., Inc.*, 904 A.2d 210, 215 (Conn. App. Ct. 2006) (same), the Summary of Benefits, a writing signed by both parties, clearly satisfies the merger clause. The existence of the merger clause alone does not support a grant of summary judgment in favor of Plaintiff.

    B. Ambiguity in the Summary of Benefits

Plaintiff points in his brief to a number of aspects of the Summary of Benefits that, in his view, establish as a matter of law that the Summary of Benefits was not intended to modify his termination date under the Employment Agreement, including:

- the Summary of Benefits specifically refers to various provisions of the Employment Agreement entitling him to the benefits, indicating that the Employment Agreement was followed, not amended, (P's Mem. 14-15);

- the Summary of Benefits states that it "'shall not constitute a waiver of any other rights [the parties] might have under the [Employment] Agreement,'" (*id.* at 15 (quoting Summary of Benefits 6)); and

- the October 20, 2014 outside date for exercising certain stock options is cued off of an October 20, 2009 termination date, and because that period could not be amended

8

without an amendment of the Employee Stock Incentive Plan ("ESIP")[9] by the Human Resources Committee ("HRC") of the Board of Directors, the termination date must be October 20, 2009, (*id.* at 15-17; P's Reply Mem. 4).[10]

Defendant points in its brief to a number of aspects of the Summary of Benefits that it argues support the opposite view – that the Summary of Benefits was intended to modify the Employment Agreement by providing for a July 31, 2009 termination date – including:

- the Summary of Benefits indicates that Plaintiff's stock options and other such benefits are 100% vested as of July 31, 2009, and under the Employment Agreement such options and benefits "'will become fully vested and exercisable at the date of such termination,'" (D's Mem. 13-14 (quoting Employment Agreement § 7(c)(iv));

- Plaintiff's base salary for the period of August 1, 2009 through October 20, 2009 was to be paid as a lump sum on February 1, 2010 – six months after July 31, 2009 – and not biweekly as if he continued to be an employee (or, for that matter, treated as an employee), (*id.* at 15);

- Plaintiff's "Compensation Accrued at Termination," as defined under the Employment Agreement, (*see* Employment Agreement § 8(c)(i)), was paid on July 31, 2009, (D's Mem. 15).

These interpretative discrepancies – and they are not the only ones – are enough to demonstrate that the Summary of Benefits is not unambiguous as to the intent of the parties. Because there is an ambiguity as to whether the Summary of Benefits was an agreement to modify Plaintiff's termination date under the Employment Agreement, I cannot, based only on the documents, say as a matter of law that it was not.[11] *See Tallmadge Bros.*, 746 A.2d at 1287.

---

[9] Plaintiff submitted a copy of the ESIP as Exhibit 23 to the Yuzek Aff.

[10] "P's Reply Mem." refers to Plaintiff's Reply Memorandum of Law in Further Support of Motion for Summary Judgment. (Doc. 63.)

[11] My decision here is not inconsistent with my previous decision denying Defendant's Motion to Dismiss. (Doc. 21.) In my previous decision, I decided that the language of the Summary of Benefits was not so clear as to render implausible Plaintiff's claim that the language of the Employment Agreement governs. (*Id.* at 7-8.) I continue to find Plaintiff's interpretation plausible. But I also find that the language of the Summary of Benefits is not so unambiguous as to render the intent of the parties clear on its face, making judgment for Plaintiff as a matter of law appropriate. Although I noted in my previous decision that the "Summary of Benefits creates ambiguity as to the intent of the parties, which must be construed against Defendant, the party that drafted the document," (Doc. 21, at 8 n.7 (citing *David M. Somers & Assocs. v. Busch*, 927 A.2d 832, 839 n.10 (Conn. 2007))), Defendant has here provided evidence (which I can consider on a motion for summary judgment) upon which a reasonable jury could find that Plaintiff both was involved in the drafting of the document, and, as a lawyer, was a sophisticated party on

Accordingly, I find it appropriate to consider extrinsic evidence as to the parties' intention in executing the Summary of Benefits. *See Ravenswood Constr.*, 936 A.2d at 685; *Gebbie*, 714 A.2d at 684.

C. Extrinsic Evidence of Intention to Modify Contract

Plaintiff points to various items of extrinsic evidence that he argues support the conclusion that the parties did not intend the Summary of Benefits to modify Plaintiff's termination date under the Employment Agreement. Most of the evidence is countered by contrary evidence provided by Defendant, demonstrating a genuine dispute as to a material fact requiring resolution at a trial. I address here only some of Plaintiff's arguments.

Plaintiff argues that the absence of a disclosure to the SEC (in a Form 10-Q or Form 10-K filing) of any amendment to Plaintiff's Employment Agreement is conclusive evidence that there was no such amendment. (P's Mem. 9-10.) But Defendant has adduced emails from the relevant time period from its outside counsel, Sullivan & Cromwell, advising that no such disclosure was necessary. (*See* Taber Aff. Ex. 43 (Release does not need to be attached to a Form 8-K filing, and no other disclosure is needed).) This is enough to create an issue of fact as to whether the absence of a Form 10-Q or Form 10-K disclosure reflects the absence of an intention that the Summary of Benefits amend the Employment Agreement.

Plaintiff also points to unsigned minutes of a July 20, 2009 meeting of the HRC of the Board of Directors which state that Plaintiff "shall end his employment with [Defendant] on

---

more or less equal footing with the drafters, (*see* Taber Aff. Ex. 53 (July 14, 2009 email from Plaintiff to Karla Packer requesting a "draft benefit statement and release as soon as possible so I could [*sic*] begin my review"); *see also id.* Ex. 20 (July 22, 2009 email from Plaintiff to Defendant's outside counsel providing comments on draft Notice); *id.* Ex. 24 (October 23, 2009 email from Plaintiff to Samuel Heyman suggesting Plaintiff had an understanding of the "complex IMS compensation and pension arrangements" that influenced his decision to leave IMS); Yuzek Aff. Ex. 8 (July 2, 2009 email from Plaintiff to Karla Packer and outside counsel attaching Plaintiff's preliminary summary of discussions regarding the terms of his termination, and stating "I will continue to look through the Agreement and Company policies to see if there's anything I've missed")). Indeed, I foreshadowed this possibility when I stated that "[w]hether the Summary of Benefits was intended as a modification may be developed in discovery." (Doc. 21, at 7 n.5.)

October 20, 2009." (Yuzek Aff. Ex. 10, at 4.) But those same minutes are themselves ambiguous, elsewhere stating that Defendant's Chief Executive Officer indicated that Plaintiff "would be leaving the organization on July 31, 2009 with a retirement date of October 20, 2009." (*Id.*) And, an earlier draft of the minutes (prepared much closer in time to the actual meeting than the finalized minutes) state only that Plaintiff "would be leaving the organization on July 31, 2009," with no reference to the October 20, 2009 date. (Yuzek Aff. Ex. 29, at IMSStein00002866_004).[12] Furthermore, Defendant has pointed to (albeit self-serving) deposition testimony of the drafters indicating that those meeting minutes were the product of human error, and notes that the only drafter who was actually in attendance at the July 20, 2009 meeting prepared the August 18, 2009 draft of the minutes that included no mention of the October 20, 2009 date. (D's Mem. 21-22.) Thus, the meeting minutes are inconclusive as to the intention of the parties in executing the Summary of Benefits.[13]

Plaintiff also points to various human resources charts produced by Defendant dated July 1, 2009 through December 9, 2009 each showing a "Term Date" for Plaintiff of October 20, 2009. (P's Mem. 23 (citing Yuzek Aff. Ex. 31).) But another internal human resources document – Plaintiff's record from PeopleSoft (Defendant's computer program for keeping payroll and benefits records, (*see* D's Dep. 184-85)[14]) – shows Plaintiff's payroll status as "Terminated" with an effective date of August 1, 2009, and shows a "Termination Date" of July

---

[12] The earlier draft was circulated on August 18, 2009, (Yuzek Aff. Ex. 29, at IMSStein00002865_001), while the minutes appear to have been finalized on October 16, 2009, (*see id.* at IMSStein00002566_001).

[13] Plaintiff and Defendant take differing views on whether corporate meeting minutes can be contradicted by extrinsic evidence. (*See* P's Mem. 22-23; D's Mem. 21-22.) The meeting minutes are relevant for purposes of this case to the extent they shed light on the intention of the parties regarding the Summary of Benefits; the legal significance of the minutes themselves as to the corporation is irrelevant.

[14] "D's Dep." refers to the 30(b)(6) Deposition of IMS Health Incorporated by Sue Burns-Finn taken on December 20, 2011. (Yuzek Aff. Ex. 25.)

31, 2009.  (Taber Aff. Ex. 17.)  Again, the evidence is conflicting as to the intention of the parties in executing the Summary of Benefit.

Also creating an issue of fact as to whether the parties intended to have Plaintiff's termination date be October 20, 2009 or July 31, 2009 are Plaintiff's own emails from the relevant time period, in which he states or implies that his termination date is July 31, 2009.  (*See* Taber Aff. Ex. 53 (July 14, 2009 email from Plaintiff to Karla Packer stating "my date of termination/separation from service will be July 31, 2009 not July 30"); *see also* Taber Aff. Ex. 19 (August 6, 2009 email from Plaintiff to Keith Pagnani stating that "day four of retirement's not too bad" and complaining that "[f]or someone's [*sic*] who's unemployed, I've been incredibly busy including getting stuck in (what turned into) an all day tax planning meeting at IMS yesterday," though stating he is "on payroll through October 20").)  Plaintiff downplays the significance of these emails as consistent with a mere "separation from service" and being "treated as an employee" under his Employment Agreement, (*see* P's Reply Mem. 13-14), but a reasonable jury could conclude based on this evidence that Plaintiff intended his termination of employment to be at the end of July, not at the end of October, as at least one IMS employee has testified, (*see* D's Dep. 43-44, 93).

In sum, Defendant has met its burden of producing evidence sufficient to demonstrate a genuine dispute as to a material fact, *see Rexnord Holdings*, 21 F.3d at 525, by providing evidence on which a jury could reasonably find for the Defendant, *see Anderson*, 477 U.S. at 252.  Accordingly, summary judgment for Plaintiff is not appropriate.[15]

---

[15] In view of my decision, I need not and do not address whether Defendant has produced "evidence sufficient to satisfy every element" of its affirmative defenses of waiver and estoppel.  *See Holcomb*, 521 F.3d at 137.

IV. **CONCLUSION**

      For the foregoing reasons, Plaintiff's Motion for Summary Judgment is DENIED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 54), and the parties are ordered to appear for a status conference on **April 22, 2013** at **3:30 p.m.**

**SO ORDERED.**

Dated: March 28, 2013
White Plains, New York

                                                              _____
                                                           CATHY SEIBEL, U.S.D.J.