UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
ROBERT H. STEINFELD,                          :
              Plaintiff,             :
                              :          **MEMORANDUM DECISION**
v.                                            :
                              :          10 CV 3301 (CS)
IMS HEALTH INCORPORATED,                       :
              Defendant.            :
--------------------------------------------------------x

Briccetti, J.:

       Before the Court is Magistrate Judge Lisa Margaret Smith's Report and Recommendation

("R&R"), dated February 14, 2014 (Doc. #119), on defendant's motion to enforce a purported

settlement agreement between the parties.  (Doc. #101).  Judge Smith recommended that the

motion be denied because, despite the existence of an otherwise binding preliminary agreement,

the parties entered into the agreement under a mutual mistake as to a material fact, such that the

agreement is voidable and must be rescinded.

       For the following reasons, the Court adopts the R&R and DENIES the motion to enforce.

I.     Standard of Review

       A district court reviewing a magistrate judge's report and recommendation on a

dispositive motion, such as a motion to enforce a settlement agreement, "may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28

U.S.C. § 636(b)(1).  Objections to the recommended ruling are reviewed de novo.  Id.; Fed. R.

Civ. P. 72(b)(3).   Unobjected to portions of the recommended ruling are reviewed for clear

error.  See Wilds v UPS, Inc., 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003).

II.    Plaintiff's Objections

       Plaintiff objects to the magistrate judge's finding that, in an exchange of emails on

August 23, 2013, the parties entered into a preliminary settlement agreement to which both

parties intended to be bound.  Specifically, plaintiff claims Judge Smith incorrectly found that

two of the four Winston factors[1] – whether either party expressly reserved its right not to be

bound, and whether all essential terms of the alleged contract were agreed upon – weighed in

favor of finding the parties had entered into a binding agreement.

Judge Smith found that the language of the preliminary agreement[2] – in which plaintiff's

counsel, in response to defendant's counsel's summary of the terms of the settlement, stated, "I

confirm my agreement on Mr. Steinfeld's behalf to these terms," and in which neither party

expressly reserved its right not to be bound absent the execution of a formal agreement – coupled

with counsel's joint communication shortly thereafter to Judge Seibel's chambers that they had

settled the matter, was strong evidence the parties did indeed intend to be bound.  (R&R, at 13-

17).[3]

The magistrate judge further found the preliminary settlement agreement was facially

complete, contained "all of its essential terms," and indicated "no future substantial

---

[1]  In Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985), the Second Circuit
established a four-factor test to evaluate whether parties intend to be bound by a preliminary
settlement agreement.  In its motion to enforce, defendant argued the Winston factors are not the
proper instrument for evaluating the parties' intent here, because Winston concerned an oral
agreement, and this case involves a written agreement; i.e., one that is reflected in an exchange
of emails.  Judge Smith concluded Winston applied, given that numerous courts in this circuit
have utilized the Winston factors to assess the binding effect of written preliminary settlement
agreements.  (R&R, at 12-13).  Defendant does not object to Judge Smith's reliance on the
Winston factors, and it was certainly not clearly erroneous for her to have done so.

[2]  Judge Smith said the preliminary agreement was comprised of an email from defendant's
counsel to plaintiff's counsel, dated Aug. 23, 2013, at 3:15 p.m., and plaintiff's counsel's reply
seven minutes later.  (R&R, at 4).

[3]  Judge Smith considered a number of other factors plaintiff claims indicated the parties did not
intend to be bound until after a formal written settlement agreement was executed.  (R&R, at 14-
16).  The magistrate found all these factors did "not overcome [the] express language" of the
preliminary agreement and the parties' joint representation to Judge Seibel that the case had, in
fact, been settled.  (R&R, at 16-17).

2

negotiations." (R&R, at 25).  In doing so, Judge Smith rejected plaintiff's argument that the preliminary agreement was incomplete because (i) language in the preliminary agreement required the parties to execute mutual general releases, (ii) the parties subsequently expressed divergent views on what they intended would be released, (iii) the preliminary agreement called for a formal written agreement with "typical 'boilerplate' provisions," and (iv) defendant later proposed terms that were arguably not boilerplate provisions.

Judge Smith concluded the promise to exchange mutual general releases was facially complete because lawyers know the nature and intended effect of a standard form mutual general release, notwithstanding the obvious fact that parties can, if they so desire, agree to alter the terms of such a release.  Thus, according to Judge Smith, what controls is not the parties' subjective intent, but rather the parties' intent as reflected in the unambiguous language of the release clause in the preliminary agreement.  Judge Smith also concluded the reference in the preliminary agreement to typical boilerplate provisions plainly meant such provisions would have no material effect on the agreement; thus, that reference did not change the fact that the preliminary agreement was facially complete as to its essential terms.  And, finally, Judge Smith found the arguably non-boilerplate terms later proposed by defendant were of no consequence because no writings contemporaneous with or prior to the preliminary agreement indicated any anticipated future negotiation of such terms.  (R&R, at 17-25).

As to the two remaining Winston factors – whether there has been partial performance, and whether the agreement at issue is the type of contract that is usually committed to writing – the magistrate judge found they weighed against finding the parties intended to be bound.  Judge Smith observed there was no partial performance and that, although there was a writing in the form of an exchange of emails, given the amount of money involved, and the lengthy time

necessary for full performance, an agreement of this type would typically be reflected in a more formal written document.  (R&R, at 25-27).

Judge Smith correctly observed that the intent of the parties here is a "close question." (R&R, 13, 28).  But because the express language of the agreement (the most important of the four factors) so clearly indicates the parties intended to be bound, combined with the fact the agreement had no open essential terms, Judge Smith ultimately concluded the parties intended the preliminary agreement to be binding.  (R&R, at 28).

In conducting a <u>de novo</u> review of the R&R, this Court has independently and thoroughly reviewed the record and the relevant case law.  Having done so, the Court finds no merit in any of plaintiffs' objections, and further finds that Judge Smith correctly concluded the parties intended to be bound by the preliminary settlement agreement, and that plaintiff's counsel was authorized to bind plaintiff thereto.[4]

III.    Defendant's Objections

Defendant objects to the magistrate judge's finding that, despite the existence of an otherwise binding preliminary agreement, the parties entered into the agreement under a mutual mistake as to a material fact, such that the agreement should be rescinded.

---

[4]  Plaintiff's peculiar contention that his counsel lacked authority to bind him is based on plaintiff's affidavit in opposition to the motion to enforce, in which he stated that although his attorney "was authorized to confirm on my behalf the parties' preliminary understanding regarding a settlement, he was not authorized to sign off on the parties' final enforceable agreement."  Judge Smith found that statement constituted an acknowledgement that plaintiff's attorney had the authority to bind plaintiff to the preliminary agreement if the agreement was intended to be binding, regardless of whether plaintiff's counsel lacked authority to bind plaintiff to a formal and final written settlement agreement.  (R&R, at 35).  Because the Court adopts Judge Smith's conclusion that the parties intended to be bound, the objection to this finding is overruled.

In the preliminary settlement agreement, defendant agreed to make a series of annual payments to plaintiff, over a seven-year period.  Judge Smith found that in the numerous written communications leading up to the preliminary agreement, plaintiff's counsel made clear it was critically important to plaintiff that he not have to pay taxes on the gross amount of the settlement in the year the settlement was reached – rather, he wanted to pay tax only on the amount he received each year over the course of the agreement, and indeed wanted defendant to indemnify him for any unforeseen tax liability – and that defendant suggested structuring the settlement as a series of annual payments to accommodate plaintiff's concerns about taxes.[5] Judge Smith also found that defendant's counsel (i) forwarded an email from his "tax partner" stating that under the terms of the proposed agreement plaintiff should only be taxed each year on the amount received that year, (ii) stated in a subsequent email that, according to the tax partner, the way in which the annual payments would be made (through a proposed annuity) "should work just fine for [plaintiff] from a tax perspective,"[6] and (iii) stated in the next sentence of the same email that defendant would alternatively be willing to make direct payments rather than payments from an annuity, without suggesting the tax consequences would be any different if the payments were made directly.  (R&R, at 30-32).

As explained in the R&R, both parties were mistaken about the tax consequences.  A section of the Internal Revenue Code and a corresponding IRS regulation require that the entire

---

[5]  The parties discussed whether defendant would make the payments directly or purchase an annuity from which the payments would be made, and ultimately agreed defendant would make the payments directly.  Either way, the settlement payments were to be made annually.

[6]  The tax attorney said the key issue was whether plaintiff had the right to receive the present discounted value of the payments, or otherwise control the manner in which the payments were made; if not, under the applicable IRS regulations and rulings, plaintiff would not be treated as having constructively received the total settlement amount in the year of the settlement, and thus should be taxed only on the annual amounts received in the years in which they were received.

settlement amount in compensation-related litigation (such as this) be paid in the year in which the settlement agreement is reached, and if paid out over more than one year, the entire amount would be taxable in the first year and be subject to a 20% penalty.  The magistrate judge found, based on the exchange of emails, that plaintiff clearly agreed to the payout over seven years in the mistaken belief he would only be liable for taxes on each payment each year.  As to whether defendant shared that mistaken belief, Judge Smith rejected the contention that defendant did not know or care whether the payment structure would accomplish plaintiff's tax objective, relying on (i) the tax partner's email, which was sent by defendant's counsel to plaintiff's counsel to reassure him that so long as plaintiff did not have the right to receive the present discounted value or otherwise control the payments, plaintiff would be free from tax liability on the entire amount in the first year, (ii) defendant's counsel's subsequent comment that annual payments financed by an annuity "should work just fine for [plaintiff] from a tax perspective," and (iii) the fact that defendant's counsel, in the next sentence, proposed the payments be made directly, without suggesting any different tax consequences.  Judge Smith concluded the evidence established defendant was aware of plaintiff's desire to be sure he would not have to pay taxes on the full amount in the year of the settlement, and mistakenly believed plaintiff's tax liability concerns were met by either payment arrangement.  (R&R, at 32-35).

In short, Judge Smith found plaintiff established that both parties erroneously believed under the terms of the settlement that plaintiff would only be liable for taxes on each payment in the year in which it was received, and this mutual mistake of fact went to the "foundation of the agreement."  (R&R, at 34).  As such, Judge Smith concluded the preliminary settlement agreement – even if it was intended to be binding – was voidable.

In conducting a <u>de novo</u> review of the R&R, this Court has independently and thoroughly reviewed the record and the relevant case law.  Having done so, the Court finds no merit in any of defendant's objections, and further finds that Judge Smith correctly concluded the parties entered into the settlement agreement under a mutual mistake of fact as to a material aspect of the agreement.  Unlike the conclusion with respect to the parties' intent to be bound, the conclusion as to mutual mistake is not a close call.

III.     <u>Effect of Agreement to Execute General Releases</u>

Defendant objects to the magistrate judge's ruling that, even if the preliminary settlement agreement is enforceable, the promise in the agreement to exchange mutual general releases did not extinguish plaintiff's rights under the Employment Agreement and the Amended Change-in-Control Agreement, including plaintiff's entitlement to certain tax indemnification by defendant, the payment of certain health care premiums by defendant, and the reimbursement by defendant of certain of plaintiff's legal fees.  Since this Court has now held Judge Smith correctly recommended that the motion to enforce the settlement be denied, the promise in the unenforceable preliminary settlement agreement to exchange releases is likewise unenforceable. Accordingly, the Court overrules defendant's objection.

**CONCLUSION**

For the reasons set forth above, the Court overrules both parties' objections to Magistrate Judge Smith's thorough and well-reasoned R&R, and adopts the R&R in its entirety.

Defendant's motion to enforce the purported settlement agreement is DENIED.

The Clerk is instructed to terminate the pending motion.  (Doc. #101).

Dated:  April 21, 2014
          White Plains, NY

                         SO ORDERED:

                         _____
                         Vincent L. Briccetti
                         United States District Judge